UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                             :

ROBIN WILLIAMS BOSWELL,           :

                         :

                 Plaintiff,     :

                         :         21 Civ. 2364 (JPC) (GRJ)

        -v-                :

                         :        <u>OPINION AND ORDER</u>

COMMISSIONER OF SOCIAL SECURITY,   :

                         :

                 Defendant.    :

                         :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Plaintiff Robin Williams Boswell brings this action seeking judicial review of a final determination of the Commissioner of Social Security denying her application for Disability Insurance Benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Dkt. 2.  The parties cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *See* Dkts. 20-21, 26-27, 28.  On July 11, 2022, the Honorable Gary R. Jones, to whom this case has been referred, issued a Report and Recommendation, recommending that Plaintiff's motion be denied and Defendant's be granted.  Dkt. 30 ("R&R") at 19.  On July 25, 2022, Plaintiff submitted timely objections to the Report and Recommendation, arguing that the undersigned should not adopt it and that "Defendant's decision to deny benefits should be reversed and remanded solely for payment of benefits or in the alternative, the case should be remanded for further administrative proceedings."  Dkt. 31 ("Objections") at 9.  For the reasons discussed below, the Report and Recommendation is adopted in part and rejected in part, and the case is remanded to the Social Security Administration ("SSA") for further proceedings.

# I.     Legal Standards

## A. Standard of Review of a Magistrate Judge's Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation. 28 U.S.C. § 636(b)(1)(C). Within fourteen days after a party has been served with a copy of the magistrate judge's report and recommendation, the party "may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). If a party submits a proper objection to any part of the magistrate judge's disposition, the district court conducts *de novo* review of the contested section. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

To be proper, an objection must be "clearly aimed at particular findings," *Hernandez v. City of New York*, No. 11 Civ. 6644 (KPF) (DF), 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (quoting *Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *1 (S.D.N.Y. Dec. 10, 2014)), and may not be "conclusory or general," *id.* (quoting *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009)). Parties may neither "regurgitate the original briefs to the magistrate judge" nor raise new arguments not raised to the magistrate judge in the first instance. *Id.*; *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).

The court also reviews for clear error those parts of a report and recommendation to which no party has filed proper or timely objections. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)). "A magistrate judge's decision is clearly erroneous only if the district court is 'left with the definite and firm conviction that a mistake has been committed.'" *Cameron v. Cunningham*, No. 13 Civ. 5872 (KPF) (FM), 2014 WL 4449794, at *2 (S.D.N.Y. Sept. 9, 2014) (quoting *Easley v. Cromartie*, 532 U.S. 234, 235, 242 (2001)).

**B.  Standard of Review of the Commissioner's Decision**

Under the relevant regulations, the SSA engages in a five-step sequential process to evaluate whether an individual is disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also generally id.* § 404.1520.  The Supreme Court has explained this process as follows:

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a substantial gainful activity.  At step two, the SSA will find nondisability unless the claimant shows that he has a severe impairment, defined as any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities.  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (cleaned up).

It is well-settled that a district court will reverse the decision of the Commissioner of Social Security ("Commissioner") only when it is based upon legal error or when it is not supported by substantial evidence in the record.  *See Greek v. Colvin*, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").  "In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks and citation omitted).  "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently."  *Campbell v. Astrue*, 596 F. Supp. 2d

446, 448 (D. Conn. 2009).  In other words, the district court must "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted); *Selian*, 708 F.3d at 417 ("If there is substantial evidence to support the [Commissioner's] determination, it must be upheld.").

## II.      Discussion

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case, which are detailed in the Report and Recommendation.  R&R at 1-4.  To briefly summarize, on May 31, 2018, Plaintiff applied for disability benefits alleging a disability beginning on April 23, 2018.  Dkt. 15 ("Administrative Record") at 146.  A hearing was then held before the Administrative Law Judge ("ALJ") on October 25, 2019, at which Plaintiff testified, as did a vocational expert.  *Id.* at 27-55.  On November 14, 2019, the ALJ denied Plaintiff's application for benefits, finding that, although Plaintiff had not engaged in substantial gainful activity since April 23, 2018 (step one), meets the Social Security Act's insured status requirements through December 31, 2023, and had a severe impairment in degenerative disc disease (step two), that impairment did not meet one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix, so as to create a presumption of disability.  *Id.* at 17-18.  The ALJ further found that Plaintiff retained the residual functional capacity to perform light work with certain limitations, and that she could perform her past work as a legal secretary.  *Id.* at 18-22.  The ALJ thus concluded that Plaintiff was not under a disability, for purposes of the Act, between April 23, 2018 and the date of her decision.  *Id.* at 22.  On August 10, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  *Id.* at 3-5.

As relevant here, Judge Jones found in the Report and Recommendation that (1) although the ALJ "should have addressed the question of whether Plaintiff met the obesity threshold more carefully and more thoroughly," "there is no reversible error as to this aspect of the ALJ's decision," R&R. at 10; (2) the ALJ properly evaluated the opinion of Dr. Rami Ravi, *see id.* at 11-16; and (3) the ALJ satisfied her duty to develop the record, *see id.* at 17-19.  Plaintiff objects to the Report and Recommendation, arguing that (1) the ALJ's failure to discuss Plaintiff's obesity was not harmless error, *see* Objections at 1-3; (2) the ALJ's findings regarding Dr. Ravi's opinion and Plaintiff's residual functional capacity are not supported by other medical evidence in the record, *see id.* at 3-4; (3) the ALJ was required to further develop the record, *see id.* at 4-5; and (4) the Report and Recommendation failed to consider Plaintiff's argument that the ALJ committed error by substituting her opinion for competent medical evidence, *id.* at 7-9.

**A.  The ALJ's Consideration of Plaintiff's Obesity**

The ALJ made a finding of fact that Plaintiff's "body mass index was below the obesity threshold" and identified degenerative disc disease as Plaintiff's sole impairment.  Administrative Record at 17.  Plaintiff argues that the ALJ erred in failing to find that her obesity had an impact on the severity of her medical condition.  Objections at 1-3.

Obesity is determined by an individual's Body Mass Index ("BMI"), which is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$).  *Louis v. Berryhill*, No. 17 Civ. 5975 (PGG) (RWL), 2018 WL 8545833, at *3 n.2 (S.D.N.Y. Oct. 11, 2018), *report and recommendation adopted* 2019 WL 1856490 (S.D.N.Y. Apr. 25, 2019).  According to the National Institutes of Health, a BMI of 30.0 or above is classified as "obesity."  *Id.* (citation omitted).  "Obesity may be considered 'severe'—and thus medically equal to a listed disability—if 'alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities.'"

5

*Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 102 (S.D.N.Y. 2015).  Accordingly, "an ALJ should consider whether obesity, in combination with other impairments, prevents a claimant from working."  *Guadalupe v. Barnhart*, No. 04 Civ. 7644 (HB), 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citing *Titles II and XVI: Evaluation of Obesity*, SSR 02-1p, 2000 WL 33952015 (S.S.A. 2000); 20 C.F.R. 404, Supt. P, App. 1, Part A § 1.00B(2)(d)).  However, because "obesity is not in and of itself a disability, . . . an ALJ's failure to explicitly address a claimant's obesity does not warrant remand."  *Browne*, 131 F. Supp. 3d at 102 (internal citation marks omitted). "Where the record contains evidence indicating limitation of function due to obesity, the ALJ must consider the effect of obesity . . . at steps two through four of the sequential evaluation process." *Id.* (cleaned up).  Conversely, the ALJ's obligation to discuss a claimant's obesity "diminishes where evidence in the record indicates [that] the claimant's treating or examining sources did not consider obesity as a significant factor in relation to claimant's ability to perform work related activities." *Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011).

Plaintiff's medical records indicate one instance in her medical history—prior to the alleged onset of her disability on April 23, 2018—when a physician apparently characterized her as suffering from "obesity."  *See* Administrative Record at 322 (reporting a past medical history of "obesity" from review of records dated August 28, 2017); *see also id.* at 62 (reporting that on December 15, 2016, Plaintiff was "counseled on weight and BP"), 219 (reporting that on May 18, 2017, Plaintiff was "counseled . . . on her weight and blood pressure").  But Plaintiff's medical records—with the exception of one record from July 22, 2019, which reflects that Plaintiff had a BMI of 30.23, *see id.* at 319—also repeatedly indicate that her BMI was slightly below the 30.0 threshold for obesity during the period of her purported disability.  *See id.* at 301-04 (BMI of 29.86 on December 19, 2018), 305-08 (BMI of 29.05 on June 21, 2018), 326 (BMI of 28.66 on July 20,

2018).   And a medical note from July 18, 2019 merely reflects that Plaintiff would "continue physical therapy" and "watch[] her weight." *Id.* at 299.

Because the ALJ's factual findings are subject to the highly deferential "substantial evidence" standard, the Court finds no basis to reverse the ALJ's finding—based on her consideration of all of the evidence in the record—that Plaintiff's BMI was below the obesity threshold. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'   If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." (citation omitted)); *Brault*, 683 F.3d 443 at 448 ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." (cleaned up) (emphasis in original)).   This is the case even though there may be some discrepancies in Plaintiff's medical records regarding her BMI during the relevant time period.   *Coppeta v. Comm'r of Soc. Sec.*, 552 F. App'x 84, 85 (2d Cir. 2014) ("In deciding whether substantial evidence exists, we defer to the Commissioner's resolution of conflicting record evidence.   If there is substantial evidence in the record to support the Commissioner's findings, those findings are conclusive." (citations omitted)); *Cage*, 692 F.3d at 122 ("In our review [of an appeal from a denial of Supplemental Security Income benefits], we defer to the Commissioner's resolution of conflicting evidence.").

Even if the record conclusively supported a finding that Plaintiff met the obesity threshold, Plaintiff "provides no explanation as to how a proper consideration of h[er] obesity would indicate a lack of substantial evidence for the ALJ's determination" that her sole impairment was degenerative disc disease.   *Browne*, 131 F. Supp. 3d at 102.   While the record reflects that Plaintiff's treating physician counseled her on her weight in May 2017, *see* Administrative Record

at 62, 219, there is no other evidence suggesting that Plaintiff's weight contributed to her impairment or constituted a separate impairment. Indeed, neither Plaintiff's treating physician, Dr. David Kaufman, nor the consultative examiner, Dr. Ravi, refer to Plaintiff's weight as affecting her physical functions. Accordingly, the ALJ's failure to address Plaintiff's obesity does not warrant remand. *See Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (holding that the ALJ did not err in determining that obesity was not a severe impairment where the plaintiff "did not furnish the ALJ with any medical evidence showing how the [] alleged impairment[] limited his ability to work"); *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (finding that the ALJ did not err in failing to adequately consider the effects of obesity where "there [was] no factual basis for thinking that 'any additional and cumulative effects of obesity' limited [the plaintiff]'s ability to perform light work"); *Younes v. Colvin*, No. 14 Civ. 170 (DNH/ESH), 2015 WL 1524417, at *4 (N.D.N.Y. Apr. 2, 2015) (finding that the ALJ's failure to address the plaintiff's obesity did not warrant remand where the plaintiff did not claim obesity as a disabling impairment and failed to identify any limitations occasioned by her obesity in her briefing before the court).

**B.  The ALJ's Evaluation of Medical Opinion**

Plaintiff also objects to the ALJ's consideration of medical opinion. First, Plaintiff argues that the ALJ erred by giving improper weight to Dr. Ravi's report because, according to Plaintiff, "it is clear that Dr. Ravi's report is hardly consistent with or supported by the evidence of record" and "more is needed to properly assess the consistency and supportability of Dr. Ravi's opinion as well as the residual functional capacity findings." *See* Objections at 3-4. Second, Plaintiff argues that the ALJ erred by substituting her own lay opinion for competent medical evidence in characterizing Plaintiff's treatment as merely "conservative" because "there is no mention in the reports that this treatment correlates to a less severe condition." *Id.* at 7-9. The Court disagrees on both grounds.

Under the Commissioner's updated regulations, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ need only "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record," *id.* § 404.1520c(b), taking into consideration the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding, *id.* § 404.1520c(c).  The "most important factors" to be considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings are "supportability" and "consistency."[1]  *Id.* § 404.1520c(a).  Moreover, the ALJ must explain how she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in her decision.  *Id.* § 404.1520c(b)(2).

To start, the ALJ noted that she "fully considered the medical opinions and prior administrative medical findings in [Plaintiff's] case."  Administrative Record at 19.  Indeed, throughout the decision, the ALJ repeatedly referred to Plaintiff's medical records from her treating physicians, Dr. Kaufman and Dr. Edward Barnes, as well as the opinions of the consultative examiner, Dr. Ravi, and the state agency medical consultants, Dr. Nisha Singh and Dr. A. Saeed.  *See, e.g.*, *id.* at 19-22.  And for each opinion that she considered in her decision—

---

[1] "Supportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  "Consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(2).

including those of Dr. Ravi—the ALJ explained the amount of weight given and her reasoning. As relevant here, Dr. Ravi performed a consultative examination of Plaintiff on September 5, 2018. *Id.* at 20, 277.  Dr. Ravi observed that Plaintiff "appeared to be in no acute distress," had a "[g]ait moderately antalgic," was "[u]nable to walk on heels or toes," "[d]eclined squat due to pain," and had "[d]iscomfort with standing." *Id.* at 278.  Based on his observations, Dr. Ravi diagnosed back pain, characterized Plaintiff's prognosis as "[g]uarded," and opined that Plaintiff had "[n]o limitations sitting" and "[m]oderate limitations standing, walking, bending, pushing, pulling, lifting, and carrying due to back pain." *Id.* at 279.

The ALJ also construed Dr. Ravi's opinion as to "moderate limitations in standing, walking, bending, pushing, pulling, lifting, and carrying"—"[a]lthough not expressed in vocationally relevant terms"—to be "reasonably interpreted as being consistent with light work." *Id.* at 20.  The ALJ found that such interpretation was reasonable and persuasive "as the overall record supports a limitation to modified light exertion." *Id.* at 21.  The ALJ also found Dr. Ravi's opinion was supported by and consistent with the opinions of the state agency medical consultants. *Id.* at 21-22.

This evaluation of the relevant medical opinions undertaken by the ALJ fully complied with the relevant regulations, and her findings were supported by substantial evidence.  Plaintiff's mere disagreement with the ALJ's conclusions is insufficient to support a remand.  *See, e.g.*, *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks and citation omitted)); *Duffy o/b/o R.P.T.C. v. Comm'r of Soc. Sec.*, No. 16 Civ. 985S, 2018 WL 4103180, at *4 (W.D.N.Y. Aug. 29, 2018) ("In short, Plaintiff simply

disagrees with the ALJ's assessment of the evidence in the record, but such a disagreement does not amount to the absence of substantial evidence.").

Nor did the ALJ improperly substitute her lay opinion for medical opinion when she characterized Plaintiff's treatment as conservative.  Throughout her decision, the ALJ found that the record shows that Plaintiff's back pain appears to be effectively controlled with routine conservative measures and treatment.  *See* Administrative Record at 19, 21-22.  While Plaintiff is correct that an ALJ's reliance on the conservative nature of a plaintiff's treatment does not, standing alone, constitute substantial evidence that such plaintiff is not physically disabled, *see* Objections at 7 (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) ("[A]n ALJ is not allowed to 'impose their respective notions that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.'")), that is not what happened here.

In addition to describing Plaintiff's treatment as conservative, the ALJ observed other factors supporting a finding that Plaintiff's purported disability was not as severe as Plaintiff claimed.  For example, the ALJ found that the record shows episodic back pain at most throughout the period at issue, large gaps in treatment with no new recommendations for evaluation and treatment, and intact strength and no atrophy to indicate disuse or total debility.  Administrative Record at 19, 21-22.  Moreover, the ALJ found that the evidence in the record, including Dr. Ravi's report, was inconsistent with Plaintiff's allegations of "severe impairment in sitting, standing, walking, or performing tasks or a pattern of severe, continuous, and unrelieved pain and alleged ineffective treatment."  *Id.* at 21.  Thus, the Court finds that the ALJ did not improperly substitute her lay opinion for medical opinion by characterizing Plaintiff's treatment as conservative and that her findings were supported by substantial evidence in the record.  *See Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) ("There is no indication that the ALJ rejected any

11

of the findings in [the physician's] notes or the MRI reports or otherwise arbitrarily substituted his own judgment for competent medical opinion." (cleaned up)); *Burgess*, 537 F.3d at 128 ("The fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record, such as the opinions of other examining physicians and a negative MRI."); *see also Dixon v. Berryhill*, No. 17 Civ. 334 (AJP), 2017 WL 3172849, at *16 n.33 (S.D.N.Y. July 26, 2017) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, *inter alia*, on a conservative treatment record.").

## C.  The ALJ's Duty to Fully Develop the Record

Plaintiff argues that the ALJ failed to adequately develop the record because she did not include Plaintiff's medical records regarding her ongoing physical therapy and her past steroid injections.  Objections at 4-7.  "In light of the non-adversarial nature of social security proceedings, the ALJ has a duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."  *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (internal quotation marks omitted); *see* 42 U.S.C. § 423(d)(5)(B) ("In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability.").  In connection with this duty, the ALJ "must make every reasonable effort to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so."  *Sotososa v. Colvin*, No. 15 Civ. 854 (FPG), 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (cleaned up).  "The ALJ's duty to develop the record applies to both *pro se* and represented

parties." *Lopez v. Comm'r of Soc. Sec.*, No. 17 Civ. 1504 (KAM), 2018 WL 5634929, at *5 (E.D.N.Y. Oct. 31, 2018).  Moreover, the ALJ's duty to develop the record "remain[s] intact even though Plaintiff's counsel indicated that the record was complete." *Cannizzaro v. Saul*, No. 19 Civ. 690, 2020 WL 5628066, at *4 (W.D.N.Y. Sept. 21, 2020).

The ALJ's duty to develop the record, however, "is not unlimited and is discharged when the ALJ possesses the claimant's complete medical history and there are no obvious gaps or inconsistencies in the record." *Shackleford v. Saul*, No. 19 Civ. 1278 (TOF), 2020 WL 3888037, at *3 (D. Conn. July 10, 2020) (cleaned up).  Thus, "where there is no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (citation omitted).  Moreover, "remand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013).

Here, the ALJ noted throughout her decision that Plaintiff had been receiving ongoing physical therapy to treat her back pain, suggesting that the apparent effectiveness of that physical therapy factored into her analysis as to Plaintiff's ability to work and her ultimate determination as to Plaintiff's purported disability.  *See* Administrative Record at 19-21.  Yet the ALJ explicitly noted in her decision that despite references to Plaintiff's ongoing physical therapy in her medical records, *see, e.g.*, *id.* at 297, 299, 301, "[t]here is no actual record of the reported ongoing physical therapy," *id.* at 21.  Given the apparent importance of Plaintiff's physical therapy on the ALJ's disability determination and having specifically noted the gap in Plaintiff's medical records, the ALJ had a duty to request Plaintiff's physical therapy records and she erred by failing to do so. *See Cannizzaro*, 2020 WL 5628066, at *3 (finding that, where the ALJ "explicitly indicated the

absence of [the plaintiff]'s treatment notes . . . in his decision," the ALJ not only "fail[ed] to fulfill his duty to develop the record, he discounted both [the plaintiff]'s 2015 statement, as well as the 2017 mental health assessment, based upon the lack of treatment records, which is clear error"); *Ubiles v. Astrue*, No. 11 Civ. 6340T (MAT), 2012 WL 2572772, at *10 (W.D.N.Y. July 2, 2012) ("The failure to develop the record cannot be harmless error [where] the ALJ relied on perceived gaps in the medical evidence to find Plaintiff not disabled.").  Likewise, the ALJ also was required to further develop the record as to Plaintiff's past steroid injections based on Plaintiff's testimony during the administrative proceeding.  *See* Administrative Record at 38 (testifying that injections had not worked and caused a negative reaction).  While it may be the case that, on remand, the ALJ's ultimate conclusion does not change following adequate development of these parts of the record, "a plaintiff is always entitled to a decision based on a fully developed record."  *Alford v. Saul*, 417 F. Supp. 3d 125, 141 (D. Conn. 2019).

*      *      *

Finally, the Court has reviewed the remainder of the Report and Recommendation to which Plaintiff and Defendant did not object, and finds it to be well-reasoned and its conclusions well-founded.

### III.    Conclusion

For the foregoing reasons, the Report and Recommendation is adopted in part and rejected in part.  Plaintiff's motion for an order reversing the Commissioner's decision or, in the alternative, remanding the matter is granted in part and denied in part.  Specifically, it is granted insofar as it seeks remand for further administrative proceedings and denied insofar as it seeks outright reversal and remand solely for payment of benefits.  Defendant's motion for an order affirming the Commissioner's decision is denied.  This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order.  On remand, the ALJ should further

develop the record with any physical therapy records for Plaintiff and medical records regarding her past steroid injections.

The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 20 and 26, enter judgment remanding this case to the Commissioner of Social Security for further proceedings, and close this case.

SO ORDERED.

Dated: August 29, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge

15